And the last case on today's list will be the case of Richard Woods v. Mara Rosa Lamas in the Attorney General of the State of Pennsylvania. And we'll call on Kathleen Beechner. Beechner. Is that correct? Yes. Beechner. Beechner? Yes. We call her Ms. Beechner. Unsurprisingly. Ms. Beechner? You and Mr. Gray are dividing your time, but you may proceed. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Kathleen Beechner, and I, along with my co-counsel, Kyle Gray, represent the appellant, Mr. Richard Woods, in this appeal. Before we begin, Your Honors, I'd like to respectfully request that we reserve two minutes of our time for rebuttal.  Thank you, Your Honor. Now, for Your Honors' ease of reference, I will be discussing the procedural portion of our argument, namely, why no procedural default occurred in this case, and my co-counsel will be discussing the merits portion, more specifically, why a speedy trial violation existed here. Mr. Woods not only substantially complied, but actually complied with Rule 1925B when, in accordance with the rule's requirements, he moved to amend his 1925B statement on the very first day that he was able to, yet received no response from either the trial court or the Supreme Court. I have a question about that. Yes. Isn't the law that courts are to consider pro se pleadings or papers when they're represented by counsel? So, Mr. Woods, yes, but at the time he filed the amendment, he was not represented by counsel. He filed his amendment the first day after he had moved to dismiss his counsel, and his counsel was successfully dismissed. But the rule specifically… Hold on just a moment. Sorry. When you say he wasn't represented, the fact that he wanted to get rid of his counsel and that his counsel had moved to be removed, that didn't mean he was without counsel. It just meant that things were in process, right? So, Mr. Woods was represented when the initial 1925B statement was raised, and then because counsel had failed to include the issue that Mr. Woods wanted to include, he moved to dismiss counsel. Sure. I'm familiar with the facts, but your position, or I understood the position you just took to be, he wasn't represented when he filed the pro se pleading. But, in fact, he was represented. He just didn't like the lawyer, and the lawyer was ready to get out and said to the court, I want to get out. But that didn't mean he was unrepresented. It just meant there was problems in the attorney-client relationship. That's different than being pro se, isn't it? So, just for clarification, Your Honor, are you speaking of the pro se PCRA pleading or the 1925 emergency motion to amend that statement? I'm talking about the emergency motion to amend. The emergency motion to amend, he filed the day after counsel, so he moved to amend, and the rule explicitly allows a litigant to amend for good cause shown, and the advisory committee notes explicitly set forth situations in which good cause, for example, would be shown. Sure. Precisely, but that seems to go around the issue, which is the court says, in effect, we're not paying attention to that pro se filing because you're still represented. Is there a reason why that's wrong? Is there a problem with the court saying we're not paying attention to your pro se materials while you're represented by counsel? Which he was still at that point, right? No, he wasn't. There was a Grainger hearing at which he was given a colloquy if he understood what would happen if he proceeded on his PCRA appeal without counsel. He proceeded through the colloquy, and it was found that he had the ability to proceed without counsel. Was that Grainger hearing, did that take place at the time he filed that pro se amendment? So, he filed the pro se amendment the day after the Grainger hearing, and the counsel was dismissed the same day. Okay. So, the Grainger hearing occurred on June 28th. He filed his emergency motion to amend on June 29th. Gotcha. Thank you. Absolutely. So, as I said previously, the rules explicitly allows for amendment for good cause shown. Mr. Woods' situation presented good cause as it amounted in he was proceeding per se, and also theoretically there was a change in counsel with Mr. Woods being his own counsel at that point. Furthermore, the rule explicitly allows Rule 1945b2 and 1925c2 explicitly allow litigants to file in either the trial court or the superior court. Here, Mr. Woods filed in the Court of Common Pleas in accordance with that rule. So, Mr. Woods not only substantially complied with Rule 1925b, but he actually complied with the rule's requirements. Furthermore, the analysis from Lee only requires that Mr. Woods substantially comply, and that means that he meets the essential requirements of what the rule seeks to say. Well, I wanted to ask whether you acknowledge that the speedy trial claim that he made right from the beginning in his original pro se post-conviction relief act filing was couched in terms of ineffective assistance of counsel. In the PCRA filing? Right. In the initial pro se PCRA filing, it was couched in ineffectiveness, but then in the June motion that he made in the emergency motion to amend, and also in his appellate brief, it was couched as a standalone claim. Is this what your friend is going to talk about? Yes, more elaborately, but I can speak to it initially. So, the Superior Court got it wrong that Woods waived his claims because he never brought up anything in the papers about the Speedy Trial Act or anything like that? Correct. So, Woods complied with the rule, and Pennsylvania's new jurisprudence required either the trial court or the Superior Court to provide a response to that, and the failure to do so has been considered an abuse of discretion. Woods was, based on his June filing alone, entitled to a response from either court, and never received such a response. He was never told that his motion was sufficient. He was never asked to file any supplemental pleadings. If he filed this in the Court of Common Pleas, how does it end up being marked as, or stamped as filed in the Superior Court? Do you know that? You may not know that. The record doesn't explicitly indicate, but what it appears that the trial court received it first, and then had moved it to the Superior Court to have a ruling on it. But, inexplicably, the Superior Court, despite stamping it as filed, never docketed the statement, never made any ruling on it. In fact, in their October order where they granted his September motion, I'm sorry, I see my time is up. So, in the October motion, they explicitly only ruled on the September statement, only in his June filing, and never granted a ruling on that, despite being required to. Thank you, Your Honor. Okay. Thank you very much, Ms. Buechner. And Mr. Gray. Good morning, Your Honors. May it please the Court, my name is Kyle Gray, and I represent the appellant, Richard Woods. And I'll cover why Mr. Woods' trial counsel was constitutionally ineffective and prejudiced Mr. Woods when he failed to raise Mr. Woods' speedy trial rights under Pennsylvania Criminal Rule of Procedure 600. Mr. Woods is entitled to... Before you go, before you go, there's a little confusion here, at least in my mind, exactly what the claims are here. Now, it seems that sometimes he was saying it's an IAC claim, other times it was a straight out, pure, either Rule 600 claim or a constitutional claim. I see now that you guys are saying that it's both. I'm not sure I ever saw both. I saw one or the other at every time. What actually is it and why? What is the issue we ought to be considering, the issues we ought to be considering and why? The issues that Mr. Woods has raised are that trial counsel was constitutionally ineffective for failing to file a Rule 600 motion under Pennsylvania Rule of Criminal Procedure 600. And construing Mr. Woods' pro se pleadings liberally, as this court has instructed in Rainey, that we ought to do with respect to determining whether a claim has been fairly presented to the state courts, Mr. Woods, in his pro se PCR petition, indicated that it appears that he raised a constitutional ineffectiveness claim based on the speedy trial violation, the Sixth Amendment speedy trial violation. However, construing his additional pro se pleadings reveals that he intended to raise those claims both under ineffective assistance of counsel and as a stand-alone claim. How do you get there? How do you get from him saying explicitly in his pro se filing, this was a claim trial counsel failed to protect, so petitioner is compelled to raise it as an ineffective assistance of counsel claim? That's his very well-articulated statement of what he understands his position to be. How do you get from that to, oh, and I'm also raising this not just as an ineffective assistance of counsel claim, but as a pure constitutional claim? Well, reading his pro se PCR petition, Mr. Woods specifically references the Sixth and Fourteenth Amendment when citing his violation of the speedy trial. Granted, it was couched under ineffectiveness, perhaps inartfully, in his pro se pleadings. There's nothing inartful about it. I'm looking at page 227 to 228 of the appendix, and he says, if you did not raise this issue in your direct appeal, explain why. And he explains why. There's nothing inartful about it. It's actually quite artful. He recognizes that he didn't raise it in his direct appeal, and he explains that's why he's bringing this as an ineffective assistance of counsel claim, because he has to, because it wasn't raised at the trial or a direct appeal of his case. So how do you get from that to we've got a constitutional claim? Well, reading the petitions liberally, Mr. Woods indicates that he cites specifically the amount of time that he was held for, being held for over two and a half years before being taken to trial, citing his violation of the Sixth and Fourteenth Amendment. But regardless of the analysis that this court applies, whether it's analyzed as a stand-alone claim or as an ineffectiveness claim, the result is the same, is that Mr. Woods is entitled to an evidentiary hearing. But the standards are dramatically different, aren't they? If this is an ineffective assistance of counsel claim only, we have to view this through the lens of Strickland, and that puts a very different analytical construct on the case, does it not? I agree, Your Honor, that there is a different standard to be applied. However, when analyzing whether prejudice was present, the analysis is the same with regards to whether prejudice was suffered for purposes of a speedy trial violation. The analysis for whether counsel's unprofessional errors altered the outcome of the proceedings, the analysis is the same. Was there a constitutional speedy trial violation? Your Honor, you clearly made, he clearly filed a pro se motion that was not filed by his counsel on a speedy trial violation during his case in chief. Correct. And that's part of your claim. That's your first ineffective assistance of counsel. Correct. How do you establish that the Commonwealth did not proceed with due diligence on that Rule 600 motion when at the very time that Mr. Woods filed his motion, when you exclude the days that are clearly excludable to him, only 377 days had passed? So, Your Honor, the Commonwealth already admits in its brief that the adjusted run date passed on August 21, 2003, leaving 84 days before trial actually took place. 474 days were not excluded on the face of the record, according to the trial court's explicit markings, and the Commonwealth has not come forward with any evidence of its due diligence to show that the case was actually tried on time. The Pennsylvania Superior Court in Ramos instructs that the Commonwealth must show that it took affirmative steps to list the case for trial prior to the run date, that it was prepared for trial within the run date, and that it was monitoring the case for compliance with Rule 600, which involves keeping a record to make sure that the adjusted run date doesn't pass before the defendant is brought to trial. And there's no notes of testimony that the Commonwealth has produced showing that the Commonwealth actually alerted the court to the pending deadline, the deadline which passed on August 21, 2003, during when the trial judge was actually out sick for a period of 47 days. Your point, though, is that trial counsel is ineffective for not re-raising that Rule 600 violation. Isn't there a strong presumption that counsel's conduct falls within a reasonable range of professional assistance when the numbers were so close? I disagree, Your Honor, because under Pennsylvania Rule of Criminal Procedure 600, once there has been shown to be a technical Rule 600 violation when more than 365 days have passed, the burden falls upon the Commonwealth to demonstrate evidence of due diligence. And the remedy, if the Commonwealth does not produce that evidence, and they have not produced it here in this record or in their supplemental appendix, then the remedy is outright dismissal with prejudice. Yeah, but you don't have a stand-alone claim here. You have an ineffective assistance to counsel claim, and accordingly we have to view this through the lens of Strickland. Correct. And there's a reasonable probability that but for counsel's unprofessional errors in not making the Rule 600 motion, the result of the proceeding would have been different because that Pennsylvania state rule provides for dismissal of all charges. But you're making an assumption that we're not entitled to make if we're going at it through Strickland, aren't you, Mr. Gray? I mean, if the approach is through Strickland, then we have to assume that trial counsel within a broad range of professional competence looked at this, understood what it was, and decided that's not a winning issue, that it's not something we ought to press. I've got to choose where to put my credibility on the line and what arguments to leave off and what arguments to push for, and that that was something that a reasonable attorney could do seeing the record that's here. In short, don't you have to win, don't you have to say that no competent attorney looking at this record would have made the judgment to leave the Rule 600 or the speedy trial claims to the side? I think that we can say that here, Your Honor, because the face of the record which was available to counsel at the time showed that more than 475 non-excludable days had passed. All the counsel had to do was- which one can go through and, in fact, your opponents have gone through and noted that there's not a single one of those days that the government was initiating on its own any kind of continuance. There were continuances that were initiated by the defense, there were changes in counsel because he didn't like them, there was an illness of a judge, but that there isn't anything in there to show the government dragging its heels and, therefore, a competent attorney might well say, I'm not pushing this point. Well, unlike the constitutional speedy trial analysis, which would take that factor into account, the Pennsylvania Superior Court has held that misconduct is not required to show a lack of due diligence and seeking affirmative continuances does not factor into that analysis. What the analysis hinges upon is whether the Commonwealth was duly diligent in bringing the case to trial within the time period that the Rule specifies. It's a very objective analysis. And all that counsel had to do was look at the record, look what was in the trial docket and what was actually marked by the trial judge and make that simple calculation and put the Commonwealth to its burden. Go ahead. And he did not. I'll give you a couple more minutes here to deal with the constitutional Sixth Amendment claim. Sure. And on that claim, even if everything else was in Mr. Woods' favor, during the time he was in jail, he was sentenced for two other cases. That's correct, Your Honor. He was. So how was he prejudiced? So, Your Honor, the Supreme Court has instructed Embargo that prejudice is assessed in the light of the interests that the speedy trial rate is designed to protect, namely to prevent oppressive pretrial incarceration, minimizing the anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. So the fact that Mr. Woods was incarcerated on other charges simultaneously after eight months into his initial – Sentenced on other charges. Sentenced on other charges, correct. But the fact that he was serving time on those other charges does not preclude the fact that he faced prejudice with respect to the overall 32 months of pretrial incarceration on the murder charge because the concurrent sentencing did not extend the overall delay that he experienced just for the murder charge. And the right to the speedy trial does not – the right to the speedy trial protects against the delay the defendant experiences for the charge he's awaiting for trial, not just the pretrial incarceration. That only accounts for one of the factors that Barker has instructed that courts are to look to when assessing prejudice. What about the reason for the delay? It's a second factor under Barker. I mean, how does that not weigh against Woods? The reason for the delay had nothing to do with the Commonwealth, did it? But 428 days – It's a different standard, perhaps, under state law. Correct. But on a straight, pure claim, I mean, how are you going to pin that on the Commonwealth? Well, the 428 days – there's at least 428 days in the record that are unrelated to defense counsel continuances, and that is neutral period, neutral time that counts against the Commonwealth because it is ultimately the Commonwealth's burden to move the case along to trial. So even though the Commonwealth – there's no evidence in the record of affirmative misconduct or continuances that push the trial date back, those neutral periods still count against the Commonwealth. Furthermore, Mr. Woods made a strong assertion of his right – I'm sorry, I see that my time is up. All right, you can finish up. And the courts have indicated that consideration of prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential to every speedy trial claim. And Mr. Woods should – we ask that Mr. Woods be given a remand in order to have this claim heard, which has not been heard before in court for over 12 years. Okay. Thank you. Thank you very much, Mr. Gray. Ms. Affronti? May it please the Court, my name is Susan Affronti. I'm representing the Commonwealth Out Police in this case. Richard Woods is a Pennsylvania State prisoner. He shot and killed his brother, Kareem Sanders, after his brother refused to give him drug money. This is a case where the Court does not need to discuss the default issue. The merits of these underlying claims are very easily resolved. Don't we always have to address the default issue? Absolutely not. Under the ADPA 19 – I'm sorry, 2254B indicates quite specifically that this Court can go directly to the merits of the claim if the merits are easier to resolve. I think that the way the statute is written, it presumes that the Commonwealth will come forward if they think it's an easier way to resolve the claim. It's a matter of comedy and federalism, and it just makes more sense for this Court to address federal claims where they're easier than to go right to the state. So your position is, don't worry about the 1925B stuff, let's talk about the merits? That is my position. All right. And if we do that, what's your response to the argument made on behalf of Mr. Woods that any competent counsel would have seen that they were way past their time here and it should have been raised? Well, look at 600 first. I assume that's the first thing you'd like to talk about. The thing my opponent did not discuss in this case, he keeps saying that there's no evidence in the record that we were diligent. There is evidence in the record that we were diligent. There are repeated indications on the docket that an earliest possible date was requested. By the Commonwealth? An earliest possible date is always requested by the Commonwealth. No one else has any interest in an earliest possible date. The defendant doesn't? Well, you would think he might want to ask for an earliest possible date, but it is a technical designation given to a time to demonstrate the Commonwealth's diligence. That's the whole point of an earliest possible date. What's in the record? I'm sorry, what? What's in the record to show that you've asked for that? The dockets themselves indicate the handwritten, the court's initial handwritten dockets, as well as the typed dockets that were before. But that doesn't say in those handwritten notes who asked? It does not. I don't know of any case that says it's the Commonwealth that has to ask for the earliest possible date. And I would ask, let's say, just for purposes of argument, that the defendant requested the earliest possible date. Does the Commonwealth then need to ask for it again? I don't know of any state case that indicates we would then have to ask for it again. If the earliest possible date is being given, then that's the earliest possible date. It would be as if we had, let's say we had a Strickland claim, and the trial counsel was sitting in court, and there is an obvious hearsay objection. And counsel stands up, but he never says a word. And the judge says, overruled. Does counsel still need to say, Your Honor, I object? Everyone knows that he did object. There would be no reason for him to go any further. Once there is an EPD on the docket, that's it. That's the end of it. We wouldn't need to say, Oh, wait, we want a prosecution EPD. If that was a rule, there would be an indication for that on the docket. There isn't an indication for that on the docket because only a prosecutor asks for an EPD. It's just the way it works. And, in fact, it's at the- Can I ask you a specific question about the timing, though? I'm looking at your brief at pages 14 and 15, and a question came up here. It looks like you're suggesting that for purposes of Rule 600, the calculation of time should end on November 19, 2003. Maybe I've misunderstood or misread it. Yes. Your Honor, I looked at the rule itself. And when I read the rule itself, it indicated plea, which is the way I read it quickly. In all frankness, I've looked at it again since argument. It's still plea and NOLA, right? I think it's only if you plead NOLA. Once I looked at it again, I think that's the case. I think that the time will begin when jeopardy would attach, which I believe would be whenever testimony is entered or openings begin or jury. So it's not the entry of the plea and not the opening, right? I don't think so. Okay. Thank you. Would we like to speak about speedy trial, constitutional speedy trial? Actually, did Your Honors like to? Was there anything else on the record? I mean, your adversary on the Rule 600 issue brought up a lot of and really pressed the due diligence on behalf of the common law. Anything else besides asking for the earliest possible date? No. And, in fact, when you look at the case law, I'm sorry, when you look at the case law on 600, the dockets are indicated, the case law indicates the dockets are where they look primarily for the notations, the proper notations. That is usually the record that we use during a 600 appeal. So in my experience, there isn't usually notes of testimony. There is usually a docket. Is there anything in the record that shows that the DA's office has a record-keeping system to track time? I'm sorry. There is nothing in the record that indicates that. The DA's office absolutely does. But there's nothing in the record. There is nothing in the record except for the fact that there is an earliest possible date indicated pretty much a year after when the complaint was filed, which indicates we weren't worrying about excludable time or excusable time. From the moment that year is done, we start raising our hand in court. This was a homicide case. This was an extremely experienced prosecutor, and he was raising his hand from the moment there was any possibility. He wanted to make sure this case went forward because, as Judge Zorn indicated, Mr. Vega was not delaying this case at all. He was ready at the listings. I think with the experienced prosecutor in a sophisticated office like yours, that you would have, if you had a record-keeping tracking system, you would have made sure that was in the record. Your Honor, I didn't put it in the record, and the reason is because we didn't have that discussion at the district court level. If we had, we would have done that. However, at this point in the proceedings, it seemed inappropriate, and I felt I could win on the record I had here because the state system recognizes the dockets, and that is traditionally what we look at. The suggestion by my opponent that the earliest possible date wasn't suggested by us, I found shocking. This is just the way it is done. Prosecutors are the ones who ask for the EPD. I mean, we're trained. When I did municipal court training, we were trained at that level that you get it ingrained in your head. There's an indication on the file. Once you're past a date, you ask for your EPD. It's just the way it works. I mean, the prosecutor's file we could have given you, but it hadn't been authenticated. It hadn't been discussed below. What about the period of time associated with the judge's illness, three and a half months there? Well, first off, my opponent characterized that as a 47-day illness. I don't think there's any reason to believe it was a 47-day illness. I think that would be pretty extraordinary. I think rather what happened was the judge was sick that day, and it took 47 days to get it listed for status again. So who is that attributable to? Who takes the hit for that? It shouldn't be the defendant, should it? It would be technically under state rules, excusable time, because there are – it's not unlike the speedy trial calculation where you have defense time, prosecutor time, and neutral time. It's actually a little bit better for the prosecutor, because it is focused on the fact that – here, let me have a quote. It's Commonwealth v. Genovese. So long as there is no misconduct on the part of the prosecuting agent in an effort to evade the fundamental speedy trial rights of the accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter. So the focus in 600 is culpability of the prosecutor. Obviously the prosecutor was not culpable for the judge's illness. It's likened to if a witness is on vacation and therefore unavailable, which I think is what happened in that final joint request. If a witness is on vacation, that's not the prosecutor's fault, and actually that is excusable time. Now if you look at it from the point of view, but that's not fair to the defendant, I understand that, but that's the way the case law is written in Pennsylvania. I have a few questions. Notwithstanding our certificate of appealability, what do you think was preserved in terms of the claims of Mr. Woods? We have always assumed these were two Strickland claims, a constitutional Strickland claim and a 600 Strickland claim. Why? As I explained in my supplemental brief, we assumed that because under state law, it was much too late to raise a stand-alone claim, much too late. PCRA are traditionally ineffectiveness claims. Unfortunately, and I do find this frustrating, but even experienced defense counsel do this. They characterize the claim first as a claim, and then they tack on that sentence at the end. My trial counsel was ineffective for failing to preserve this. It's a common way of doing it. In all honesty, I think it's strategic on the part of the defense to get the court to focus on the claim and not the Strickland overlay that you guys have been speaking about. It is, however, the way it is traditionally done. I would actually prefer we start from a Strickland point of view, but I don't write the initial brief. Let's start on the constitutional claim, though. Right. So under a speedy trial analysis, we have the four prongs. The first prong is the uncommonly long. It's 32 months. I think it gets through the gateway. And prong two, the question is who do we blame for the delay? Now, you do acknowledge that under Barker v. Wingo, that because of the length of the delay, the inquiry into the other three factors is at least triggered. Yes, absolutely. Okay. Thirty-two months is sufficient to get to the rest. To trigger it. On prong two, you have, by my calculations, 22 months of defense time. You have no deliberate prosecution time, so you have your two ends, and then that leaves us with this middle section, which is neutral time. They're basically three periods. There's three months before the preliminary hearing, two months for a competency evaluation, and then four months delayed due to that illness we talked about. I think standing alone, that's not enough to shift things over to the prosecution. It is, at worst, neutral, but I think actually it's a fairly short amount of time. Wouldn't that weigh heavily against the defendant? I think it weighs against the defendant, yes. Thank you for saying I was conceding too much, Your Honor. As to prong three, was the right asserted? Here we have a pro se submission. He was represented by counsel, so they were not allowed to review that. My opponent says that there was nothing else the petitioner could have done. There's nothing in the record to really tell us one way or the other. But I would point more importantly to when you look at prong three, it does matter if there was continued defense delay afterward, and that's clearly demonstrated here. It was defense counsel who was repeatedly unavailable and unprepared. And so even if you say that that's an assertion under prong three, once the delay continued, that ends that prong. That's against defense. And how about prejudice? Prejudice, essentially there's no prejudice in this case at all. He was already incarcerated. There was no decline in his mental health. And there was no impairment to the defense. This was actually a very straightforward case. There was extremely good evidence, and I really don't see what else he could have presented other than what he presented. Okay. Thank you.  Anything else? Thank you, Your Honor. Thank you, Mr. Fronte. And on rebuttal, whoever of the two counselors chooses to present rebuttal. Mr. Gray? Thank you. Your Honor, I just have three points in rebuttal. First, the assumptions that have been read into the record here point out the need for an evidentiary hearing. Regarding the time for excludable delay, regarding the EPD notifications, the earliest possible trial date, there's no indication in the record that the Commonwealth actually made those requests. Case law indicates Commonwealth v. Aaron, Pennsylvania Superior Court, 2002, indicates that the Commonwealth has to actually ask for the earliest possible trial date, and that must be contained in the record. Commonwealth v. Jones indicates the same. If we're looking at this through Strickland, Mr. Gray, doesn't the requirement that we assume that trial counsel knew what he was doing cast those EPD notations in the light of counsel understanding the government is asking for this? In other words, if we're looking through the Strickland lens, doesn't that color this piece that you're putting in front of us, too? Well, I would argue, Your Honor, that the lens of Strickland, we have to analyze it still through how the Rule 600 actually works and how that would influence counsel's analysis and what was available to him. And what was available to him was in the record. And I understand your assertion to be, yeah, the record repeatedly shows earliest possible date, but who knows who said that? And the question I'm trying to ask you is, if we're taking a Strickland perspective, isn't it fair to read that as understanding defense counsel sees that as the government properly asking for the earliest possible trial date and therefore not objecting? Well, I would argue, Your Honor, that under Commonwealth v. Hawk, the Pennsylvania Supreme Court case, the Commonwealth has the affirmative burden to show due diligence at all periods of time during the case. So even if those two indications did indicate that the Commonwealth did, in fact, make those requests, that alone is not enough to satisfy the due diligence burden. And there's no information in the record to show counsel's strategic calculation to not actually put the Commonwealth to its burden. That's why there's a presumption, right, Mr. Gray, because the record is frequently silent. But Strickland tells us when the record is silent, you presume that defense counsel was doing the right thing. Or maybe I'm misunderstanding Strickland. Isn't that what Strickland requires us to do? Correct, Your Honor. But this is a case that has been held to have been defaulted for over 12 years, which we argue was an exorbitant application of a Pennsylvania state rule. And therefore, an evidentiary record has never been – regarding his trial counsel's decisions. And testimony would need to be taken. Mr. Woods' testimony would need to be taken. And other evidence, such as notes of testimony, court transcripts, things of that nature, which don't appear in this record, which would certainly inform that analysis, and which I agree is relevant, doesn't appear in this record. Okay. We thank you, Mr. Gray. Thank you. Ms. Beechner, we want to thank the Drexel Appellate Law Clinic for your help in representing Mr. Woods in this appeal for an excellent job, very well done. And we thank counsel for the Commonwealth, and we'll take this matter under advice.